# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **ROMEL AMAYA-CRUZ, et al.,** ) | **CASE NO. 1:20 CV 789** |
| ) | |
| Plaintiffs-Petitioners, ) | **JUDGE DAN AARON POLSTER** |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **REBECCA ADDUCCI, Detroit District** ) | |
| **Field Office Director, U.S. Immigration &** ) | |
| **Customs Enforcement, et al.,** ) | |
| ) | |
| Defendants-Respondents. ) | |

On Friday, April 10, 2020, Plaintiffs filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Injunctive and Declaratory Relief, **Doc #: 1**, and Motion for Temporary Restraining Order ("First TRO Motion"), **Doc #: 2**.[1] Plaintiffs state they are four "medically vulnerable ICE detainees, three of whom are confined to the Geauga County Jail and one to the Seneca County Jail, who seek safe and immediate release based on their risk or serious harm or death if exposed to COVID-19." Doc #: 2 at 1. Although there is no evidence that anyone, staff or detainees, at these two jails has the virus, it is now common knowledge that 25% of people who are carrying the virus are asymptomatic. Thus, given the unique nature of this pandemic and absent testing, there is nothing short of immediate release to ensure that certain high-risk detainees, such as Plaintiffs, are not exposed to the virus.

---

[1] Plaintiffs subsequently filed an Amended Petition and TRO Motion that added 6 more ICE detainees. Respectively, Doc ##: 15, 16. That is why the Court will to refer to Doc #: 2 as the First TRO Motion. A hearing is scheduled on the Second TRO Motion on April 24, 2020.

On April 14, 2020, Defendants filed a response brief stating they "acknowledge that the spread of COVID-19 may be an acute possibility in the correctional context," but note that these facilities are implementing additional, aggressive prevention measures based on CDC guidelines. Doc #: 17 at 2.  Furthermore, granting Plaintiffs' requested relief based on the possibility that a detainee may catch the virus in a facility where the virus is not currently present "would provide grounds to release a large majority of detainees in ICE custody." *Id*. at 2-3.

On April 15, 2020, the Court held a Telephonic Hearing on the First TRO Motion.  At that time, the Court determined that three of the Plaintiffs had not demonstrated they were at high risk of developing COVID-19; therefore, there was no basis for emergency relief and the Court denied the First TRO Motion as to those Plaintiffs.[2]  Doc #: 26 at 3. With respect to Plaintiff Romel Amaya-Cruz, however, the Court observed that he appeared to be a particularly high-risk individual who would be susceptible to serious illness or death if exposed to the virus. *Id*. at 2.  Thus, the Court reserved ruling as to Amaya-Cruz, directed counsel to confer and determine whether they can agree on conditions that could be imposed upon Romel if released, and directed them to file a report on the status of their discussions on April 17, 2020.  *Id*. at 2.

The Court has now reviewed the status report.  Doc #: 29.  Defendants assert that ICE Enforcement and Removal Operations ("ERO") has again reviewed Amaya-Cruz's records to determine whether his current health status amidst this pandemic makes him suitable for release with appropriate conditions.  They have concluded that his HIV status alone does not compel the conclusion that he is being held in conditions that meet the deliberate-indifference standard necessary to state a Fifth Amendment claim.  Thus, he should not be released at this time.  *Id*.

---

[2]Those Plaintiffs are Jonas Mbonga, Elvira Pascalenco, and Hector Manuel Reyes Cruz.

Defendants quote the CDC Guidelines as the barometer for assessing people at risk or who may need to take extra precautions with regard to COVID-19:

Are people with HIV at high risk for COVID than other people?

At the present time we have no specific information about the risk of COVID-19 in people with HIV.

Older adults and people of any age who have a serious underlying medical condition might be at high risk for severe illness, including people who are immunocompromised. The risk for people with HIV getting very sick is greatest in:
- People with a low CD4 cell count, and
- People not on HIV treatment (antiretroviral therapy or ART).

People with HIV can also be at increased risk of getting very sick with COVID-19 based on their age and other medical conditions.

Doc #: 29 at 3 (citation omitted). Defendants state that Amaya-Cruz does not have a low CD4 count; he is taking antiretroviral medications at the Geauga facility; and his HIV is stable. *Id.* Further, "according to the CDC, his HIV diagnosis alone may not necessarily put him at high risk for complications from COVID-19." *Id.* (emphasis added). Finally, "his medical issues are being treated and managed at the Geauga facility." *Id.*

The record shows, and Defendants do not dispute, that in addition to Amaya-Cruz' HIV status, he suffers brain lesions (bleeding on the brain), toxoplasmosis (a parasitic infection), and toxoplasmosis encephalitis (swelling of the brain caused by toxoplasmosis). Doc #: 2 at 6. He suffers chronic headaches and neck pain. *Id.* And while Amaya-Cruz's CD 4 cell count is within normal range, the record shows that since entering the Geauga facility, he has had a heightened level of HIV present in his body. *Id.* He states that is impossible to maintain adequate social distance in the facility and in the last two weeks, numerous people have been

-3-

transferred into and out of his pod–some of whom have coughs and all of whom are relegated to the general population. Doc #: 2-5 ¶ 7.

As Defendants have repeatedly pointed out, Amaya-Cruz' HIV status *alone* does not necessarily put him at high risk for complications from COVID-19, and people with HIV can be at increased risk of getting critically ill with the virus based on their age *and other medical conditions*. Amaya-Cruz is not just HIV-positive; he has a panoply of conditions that render him severely immunocompromised. Social distancing is perhaps the most important way to keep the virus from spreading, and though the J-dorm where Amaya-Cruz resides at the Geauga facility is at 50% capacity, all agree it is nearly impossible to maintain safe social distancing in the correctional context. Finally, at the April 14 Hearing, Defendants stated that of the 480 ICE detainees in Ohio and Michigan, 75 to 80 people have been identified as high-risk persons for ERO review, but only a handful have been released.

The Court, having reviewed the record, concludes that keeping Amaya-Cruz in detention during the COVID -19 pandemic with his severely tenuous, immunocompromised health, violates the Fifth Amendment. Accordingly, the Court **GRANTS** the First TRO Motion as to Romel Amaya-Cruz with the following conditions:

Romel Amaya-Cruz must stay with his sister who resides in Cleveland and self-quarantine in her residence for 14 days. Furthermore, he may not drive any vehicle. Should he abscond from his sister's residence and/or appear for his immigration hearing scheduled on April 29, 2020 or any future hearings, he will be deemed to have forfeited his asylum claim and any right to contest immediate removal from the country.

Defendants concede that Amaya-Cruz is at high risk of contracting COVID-19 but that he needs to be detained because he is a danger to the community.  He is a danger to the community because of two DUI convictions he received ten years ago.  Defendants also contend that he is a flight-risk due to his repeated illegal re-entries into the country.  However, he has immigration counsel who is currently representing him so that he may eventually stay in Cleveland with his family.  The aforementioned conditions address these concerns.  Moreover, everything possible should be done to release high-risk persons from penal institutions at this unique time, both to protect them, the remaining detainees, and the staff.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster    April 18, 2020*
**Dan Aaron Polster**
**United States District Judge**